# **EXHIBIT B**

# NONQUALIFIED STOCK OPTION AGREEMENT
# PURSUANT TO THE
# IPS STRUCTURAL ADHESIVES HOLDINGS, INC. STOCK OPTION PLAN

This Nonqualified Stock Option Agreement (the "Option Agreement") is made and entered into as of [July 24], 2006 (the "Date of Grant"), by and between IPS Structural Adhesives Holdings, Inc., a Delaware corporation (the "Company"), and Mark Brown (the "Optionee"). Capitalized terms not defined herein shall have the meaning ascribed to them in the IPS Structural Adhesives Holdings, Inc. Stock Option Plan (the "Plan").

1. <u>Number of Shares</u>. The Company hereby grants to the Optionee an option (the "Option") to purchase 5,243.42857 Shares (the "Option Shares") at an Exercise Price per Share of $5.00, subject to all of the terms and conditions of this Option Agreement and the Plan, including, without limitation, the Sale Rights provisions under Section 12 of the Plan and the Purchase Rights provisions under Section 13 of the Plan.

2. <u>Option Term</u>. The term of the Option and of this Option Agreement (the "Option Term") shall commence on the Date of Grant set forth above and, unless the Option is previously terminated pursuant to this Option Agreement or Section 7(h) of the Plan, shall terminate upon the tenth anniversary of the Date of Grant (the "Expiration Date"). As of the Expiration Date, all rights of the Optionee hereunder shall terminate.

3. <u>Exercisability</u>.

(a) Subject to Sections 4 and 6 below and the terms of the Plan, one-fifth (20%) of the Option Shares shall vest and become exercisable on the first anniversary of July 14, 2006 and an additional one-fifth (20%) of the Option Shares shall thereafter vest and become exercisable on each of the next four anniversaries of July 14, 2006, provided the Optionee has been continuously employed by, or has continuously provided services to the Company or any Parent or Related Company through such date. For purposes of this Option Agreement, "Related Companies" shall mean (i) any corporation, partnership, joint venture or other entity in which the Company owns, directly or indirectly, at least a 20% beneficial ownership interest and (ii) IPS Intermediate Holdings Corporation and its Subsidiaries.

(b) Notwithstanding anything in this Option Agreement to the contrary, in the event of a Change of Control, all Options shall become fully vested and exercisable as of the date of the Change in Control.

4. <u>Termination of Employment or Service</u>. If the Optionee's employment with, or service as a director, consultant or advisor to, the Company or to any Parent or any of the Company's Related Companies or Subsidiaries terminates for any reason other than for Cause, then each outstanding Option granted to the Optionee, to the extent that it is exercisable at the time of such termination, shall remain exercisable until thirty (30) days after such termination (ninety (90) days in the case of termination

by reason of death or Disability), on which date each such Option shall expire. If the Optionee's employment with, or service as a director, consultant or advisor to, the Company or to any Parent or any of the Company's Related Companies or Subsidiaries terminates for Cause, then each outstanding Option granted to such Optionee shall expire on the date of such termination. Notwithstanding the foregoing, each outstanding Option granted to the Optionee that is not vested and exercisable as of the Optionee's date of termination, shall expire on such date of termination, and no Option shall be exercisable after the expiration of its term.

5. <u>Method of Exercise of Option</u>.

(a) The Option may be exercised by delivering to the Company an executed stock option exercise notice in the form attached hereto as <u>Exhibit A</u>, or in such other form as may be approved by the Committee from time to time, which shall set forth, *inter alia*, (i) the Optionee's election to exercise the Option, (ii) the number of Shares being purchased and (iii) any representations, warranties and agreements regarding the Optionee's investment intent and access to information as may be required by the Company to comply with applicable securities laws, and payment in full of the aggregate Exercise Price of the shares being purchased.

(b) The Option may not be exercised unless such exercise is in compliance with all applicable federal and state securities law and all other applicable laws, as they are in effect on the date of exercise.

(c) Payment of the aggregate Exercise Price for Option Shares being purchased and any applicable withholding taxes may be made in cash or by check.

(d) The Committee may require, as a condition to exercise the Option prior to a Public Offering, that the Optionee execute a stockholders' agreement.

6. <u>Nontransferability of Option</u>. The Optionee shall not be permitted to sell, transfer, pledge or assign any Option other than by will or the laws of descent and distribution (including by instrument to an inter vivos or testamentary trust in which the Options are to be passed to beneficiaries upon the death of the Optionee) and all Options shall be exercisable during the Optionee's lifetime only by the Optionee.

7. <u>Notices</u>. All notices and other communications under this Option Agreement shall be in writing and shall be given by facsimile or first class mail, and shall be deemed to have been duly given three (3) days after mailing or twenty-four (24) hours after transmission by facsimile to the respective parties named below:

    If to Company:    IPS Structural Adhesives Holdings, Inc.
                                455 W. Victoria Street
                                Compton, CA 90220
                                Fax: (310) 898-3390

If to the Optionee:   Mark Brown
                      9216 Tweedy Lane
                      Downey, CA 90240

8.  Either party hereto may change such party's address for notices by notice duly given pursuant hereto.

9.  <u>Securities Laws Requirements</u>.  The Option shall not be exercisable to any extent, and the Company shall not be obligated to transfer any Option Shares to the Optionee upon exercise of such Option, if such exercise, in the opinion of counsel for the Company, would violate the Securities Act (or any other federal or state statutes having similar requirements as may be in effect at that time) or would cause the Company to be required to register the Option Shares under Section 12(g) of the Exchange Act.  Further, the Company may require as a condition of transfer of any Option Shares pursuant to any exercise of the Option that the Optionee furnish a written representation that he or she is purchasing or acquiring the Option Shares for investment and not with a view to resale or distribution to the public.  The Optionee hereby represents and warrants that he or she understands that the Option Shares are "restricted securities," as defined in Rule 144 under the Securities Act, and that any resale of the Option Shares must be in compliance with the registration requirements of the Securities Act, or an exemption therefrom, and with the requirements of any applicable state "blue sky" laws.  Each certificate representing Option Shares shall bear the legends set forth below and any other legends that may be required by the Company or by any federal or state securities laws:

> THE SECURITIES EVIDENCED BY THIS CERTIFICATE ARE RESTRICTED SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES THEREUNDER, AND MAY NOT BE SOLD, OFFERED FOR SALE OR OTHERWISE TRANSFERRED IN THE ABSENCE OF REGISTRATION OR AN EXEMPTION THEREFROM.

> THE SECURITIES EVIDENCED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER AS SET FORTH IN THE COMPANY STOCK OPTION PLAN, A COPY OF WHICH IS AVAILABLE FROM THE COMPANY.  SUCH TRANSFER RESTRICTIONS ARE BINDING ON TRANSFEREES OF THESE SHARES.

Further, if the Company decides, in its sole and absolute discretion, that the listing or qualification of the Option Shares under any securities or other applicable law is necessary or desirable, the Option shall not be exercisable, in whole or in part, unless and until such listing or qualification, or a consent or approval with respect thereto, shall have been effected or obtained free of any conditions not acceptable to the Company.

216162.1B-Palo Alto Server 1A - MSW

10. <u>No Obligation to Register Option Shares</u>. The Company shall be under no obligation to register the Option Shares pursuant to the Securities Act or any other federal or state securities laws.

11. <u>Market Stand-Off</u>.

(a) The Optionee shall not Transfer any Shares acquired by the Optionee upon exercise of an Option for a period (i) of one hundred eighty (180) days following the closing of a Qualified Public Offering and (ii) commencing on the earlier of the date the Company notifies such Optionee of its intention to conduct any Public Offering (other than a Qualified Public Offering) or the date the Company publicly announces such intention, and ending on the date that is ninety-one (91) days after the effective date of any Registration with respect thereto (provided, that, in no case shall such Optionee be subject to any such restriction on Transfer solely by virtue of this Plan at any time when Fremont is not so subject) or, in each case, (x) such longer period of time as may be reasonably requested by the Company's underwriter in connection with such Public Offering or Registration and (y) if such Public Offering or Registration is in connection with a sale or similar corporate transaction, such longer period of time as may be set forth in any lock-up or market stand-off agreement executed by the beneficial owners of at least twenty-five (25%) of the outstanding Shares immediately before such sale or similar corporate transaction (provided, that, with respect to clause (x) and (y), such Optionee shall only be subject to such restriction on Transfer to the same extent as Fremont, including the benefit of any waivers granted by any counterparty thereto for the benefit of Fremont).

(b) The Optionee hereby agrees to execute and deliver such other agreements as may be reasonably requested by the Company or its underwriter which are consistent with the foregoing or which are necessary to give further effect thereto. In addition, if requested by the Company or any representative of the underwriter, the Optionee shall provide, within ten (10) Business Days of such request, such information as may be required by the Company or such representative in connection with the completion of any public offering of the Company's securities pursuant to a Registration. The Company may impose stop-transfer instructions with respect to the Shares subject to the foregoing restriction until the end of the applicable period.

12. <u>Protections Against Violations of Agreement</u>. No purported Transfer of any of the Option Shares by any holder thereof in violation of the provisions of this Option Agreement or the certificate of incorporation or the by-laws of the Company, will be valid, and the Company will not transfer any of said Option Shares on its books nor will any of said Option Shares be entitled to vote, nor will any dividends be paid thereon, unless and until there has been full compliance with said provisions to the satisfaction of the Company. The foregoing restrictions are in addition to and not in lieu of any other remedies, legal or equitable, available to enforce said provisions.

13. <u>Confidentiality</u>. From and after the Date of Grant, the Optionee shall maintain the confidentiality of all non-public information relating to the Company, any Parent and any of the Company's Related Companies or Subsidiaries.

14. <u>Noncompetition</u>. The Optionee shall not, for a period beginning on the Date of Grant and ending on the date that the Optionee ceases to be an employee, officer or consultant of the Company, any Parent or any of the Company's Related Companies or Subsidiaries, be an employee, officer, independent contractor or consultant of, or directly or indirectly, start up, own, or participate in the ownership or operation of any business within North America which is competitive with the Business. For purposes of this Option Agreement, "Business" shall mean the business and operations of the Company or any Parent or any of the Company's Related Companies or Subsidiaries, as conducted as of the Date of Grant, together with any lines of business entered into by the Company or any Parent or any of the Company's Related Companies or Subsidiaries from time to time after the Date of Grant but prior to the date of the termination or resignation of such Optionee's consulting agreement or employment with the Company, any Parent or any of the Company's Related Companies or Subsidiaries.

15. <u>Nonsolicitation</u>. The Optionee shall not, for a period beginning on the Date of Grant and ending on the date that is two (2) years from the termination or resignation of the Optionee's consulting agreement or employment with the Company, any Parent or any of the Company's Related Companies or Subsidiaries, directly or indirectly, solicit, induce or encourage, or attempt to solicit, induce or encourage, any employee, independent contractor, consultant, supplier or customer of the Company, any Parent or any of the Company's Related Companies or Subsidiaries to terminate or alter his, her or its relationship with the Company or such other employee, independent contractor, consultant, supplier or customer of the Company or any of its Parents, Related Companies or Subsidiaries.

16. <u>Failure to Enforce Not a Waiver</u>. The failure of the Company to enforce at any time any provision of this Option Agreement shall in no way be construed to be a waiver of such provision or of any other provision hereof.

17. <u>Governing Law</u>. This Option Agreement shall be governed by and construed according to the laws of the State of Delaware without regard to its principles of conflict of laws.

18. <u>Incorporation of Plan</u>. The Plan is hereby incorporated by reference and made a part hereof, and the Option and this Option Agreement shall be subject to all terms and conditions of the Plan.

19. <u>Rights as a Stockholder</u>. Neither the Optionee nor any of the Optionee's successors in interest shall have any rights as a stockholder of the Company with respect to any Shares subject to the Option until the date of issuance of a stock certificate for such Shares.

20. <u>Agreement Not a Contract for Services</u>. Neither the Plan, the granting of the Option, this Option Agreement nor any other action taken pursuant to the Plan shall constitute or be evidence of any agreement or understanding, express or implied, that the Optionee has a right to continue to provide services as an officer, director, employee, consultant or advisor of the Company, any Parent, or any of the Company's Related Companies or Subsidiaries for any period of time or at any specific rate of compensation.

21. <u>Authority of the Committee</u>. The Committee shall have full authority to interpret and construe the terms of the Plan and this Option Agreement. The determination of the Committee as to any such matter of interpretation or construction shall be final, binding and conclusive.

22. <u>Acceptance</u>. The Optionee hereby acknowledges receipt of a copy of the Plan and this Option Agreement. The Optionee has read and understands the terms and provisions thereof, and accepts the Option subject to all the terms and conditions of the Plan and this Option Agreement.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Option Agreement on the day and year first above written.

**OPTIONEE**       **COMPANY**

By _[signature]_      By _[signature]_

Name Mark Brown      Name _ERIC PRESCOTT_

     Title _CEO_

216162.1B-Palo Alto Server 1A - MSW

**EXHIBIT A**

**IPS STRUCTURAL ADHESIVES HOLDINGS, INC.
STOCK OPTION AGREEMENT**

**NOTICE OF EXERCISE**

_____, ____

IPS Structural Adhesives Holdings, Inc.
455 W. Victoria Street
Compton, CA 90220
Attn: Corporate Secretary

    On _____, I was granted an option (an "Option") by IPS Structural Adhesives Holdings, Inc. (the "Company") under the Company's Stock Option Plan (the "Plan") and a stock option agreement, between myself and the Company (the "Option Agreement"). This letter is to notify you that I wish to purchase Option Shares under the Option Agreement as set forth below.

**Exercise of Option**

1.  I wish to purchase ____ Option Shares at the exercise price of $____ per share for a total cost of $____.

2.  I am paying for these Option Shares by enclosing cash and/or a certified or cashier's check payable to the Company in the amount of $____.

3.  I am paying the local, state and federal withholding taxes and/or all other taxes that the Company has advised me by enclosing cash and/or a certified or cashier's check payable to the Company in the amount of $____.

4.  In exercising my Option I hereby warrant and represent to the Company that:

  (a)  I have no contract, undertaking, agreement, or arrangement with any person to sell or transfer to such person or to any third person any of the Option Shares and, I am acquiring such Option Shares for investment only and not with a view toward distribution.

  (b)  I acknowledge that the Company has no obligation to issue a certificate evidencing any Option Shares purchasable by me until the purchase price of such Option Shares is fully paid as set forth in the Option Agreement.

  (c)  I agree to be bound by all the terms and conditions of the Plan, including, without limitation, the provisions regarding Market Stand-Off, the Sale Rights, the Purchase Rights and Nontransferability of the Option (each of

the foregoing as defined or described in the Plan) and the Option Agreement.

(d)     I agree to enter into any stockholders' agreement as may be required pursuant to the terms of the Plan or the Option Agreement.

Very truly yours,

Mark Brown
Optionee

Name and Address (please print)

_____

_____

Telephone Number: (  )_____

Social Security Number: _____

-2-

216162.1B-Palo Alto Server 1A - MSW